# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER SESSION, 1998

FILED

March 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9803-CR-00096 |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. BERNIE WEINMAN, JUDGE |
| GEORGE BROOKS, | ) | |
| | ) | |
| Appellant. | ) | (AGGRAVATED ROBBERY) |

| FOR THE APPELLANT: | FOR THE APPELLEE: |
|---|---|
| **A.C. WHARTON** <br> District Public Defender | **JOHN KNOX WALKUP** <br> Attorney General & Reporter |
| **WALKER GWINN** <br> Assistant Public Defender <br> Criminal Justice Center, Suite 201 <br> 201 Poplar Avenue <br> Memphis, TN 38103 | **PETER M. COUGHLAN** <br> Assistant Attorney General <br> 2nd Floor, Cordell Hull Building <br> 425 Fifth Avenue North <br> Nashville, TN 37243 |
| | **JOHN W. PIEROTTI** <br> District Attorney General |
| | **P. T. HOOVER** <br> Assistant District Attorney General <br> Criminal Justice Center, Suite 301 <br> 201 Poplar Avenue <br> Memphis, TN 38103 |

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, George Brooks, appeals as of right following his conviction in the Shelby County Criminal Court. This was Defendant's second trial surrounding an incident which occurred on March 25, 1994. Following Defendant's first trial, he was convicted of aggravated robbery. In an appeal to this court, Defendant argued that the trial court erred in failing to instruct the jury on the lesser included offense of aggravated assault. This court reversed the Defendant's conviction and remanded for a new trial on that basis. State v. George Brooks, No. 02C01-9602-CR-00050, Shelby County (Tenn. Crim. App., at Jackson, May 14, 1997). Defendant was again convicted of aggravated robbery in the second trial. He appeals now on the basis of insufficiency of evidence regarding proof of Defendant's identity as the perpetrator and that the victim's injuries constitute "serious bodily injury." We affirm the judgment of the trial court.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

The Defendant and the victim, Terry Howell, were co-workers at a plant, United Liquor, in Memphis. On March 25, 1994, the Defendant asked the victim to borrow twenty dollars ($20.00), but the victim refused. Following work that day, the victim went to a friend's home. Around 8:00 p.m., the victim left his friend's home and began to walk towards his home. As the most direct route to his home was through an alley behind the Defendant's home, the victim walked through the alley and was approached by the Defendant. The Defendant again asked the victim to borrow twenty dollars ($20.00), but the victim still refused. Defendant then hit the victim in the face with an unidentifiable black object. Following the attack, the victim noticed that sixty dollars ($60.00) was missing from his pocket.

The victim testified that he was nearly knocked unconscious by the assault. He was able to "stagger" home, where he attempted to recover. When the swelling and pain persisted, the victim went to the hospital. The victim had sustained two (2) broken bones to his lower jaw in addition to a broken nose. The victim had to have surgery at a later date to insert a metal plate under his left eye. The victim was under a physician's care for approximately one (1) month. He stated that at the time

of trial his teeth were still numb and he still had pain in his eye. This testimony of the victim's injuries was unrefuted by the Defendant.

Jerome Smith, a supervisor to both the Defendant and the victim, stated that on Monday following the incident between these employees, the Defendant arrived early for work. When the Defendant came in, he said, "You all looking for Terry. . . Terry won't be in this morning because I put this on him . . . I'll bet you anything he won't be here this morning." When asked to describe what that statement meant to him, Smith explained that meant that Defendant had "whipped [the victim] up." The victim did not show up for work that day and they later found out that he had been beaten. The Defendant constantly bragged about doing it at first, but later recanted after he found out he was going to trial.

Billy March was working with both the Defendant and the victim in March 1994 at United Liquor. On March 28, 1994, Defendant came to work and stated that the victim would not be there because he "messed him up." The victim did not show up for work that day, but did return later that same week.

Paul Gray, also an employee of United Liquor, stated that on March 28, 1994, the Defendant advised him that the victim would not be coming in to work because he "took him out." The victim did not come to work that day.

This concluded the State's case-in-chief.

Aquilla Sorrell testified for the defense that she was living with the Defendant and her four (4) children in March 1994. Sorrell knew of the victim because he lived

-4-

in the same neighborhood. On March 25, 1994, Sorrell recalled that she was not working and was at home. After working that day, the Defendant came home and then returned to the store. Defendant was gone approximately five (5) minutes and returned home. She and Defendant stayed home the remainder of the evening. The victim came over for about ten (10) minutes later that night, and she recalled that he had not been beaten up or anything when he was there. The next time that the Defendant left their home was on Saturday morning, March 26, 1994.

The Defendant testified that he was living with Aquilla Sorrell in March 1994. He was working at United Liquor as a truck driver and knew the victim as a co-employee. On March 25, 1994, he got off work around 6:30 p.m., then went home. Defendant went back out to the store, but was only gone a few minutes. He described that he was really tired and went to sleep after returning home. Defendant did not recall the victim coming over that evening. When Defendant got to work on the following Monday morning, another employee told him that he had been accused of robbing the victim. Defendant denied robbing or beating the victim.

Regarding the sufficiency of the evidence, Defendant contends that the State failed to prove his identity in the attack upon the victim. In addition to the victim's identification of the Defendant as the perpetrator of the offense, three (3) other co-workers of both the Defendant and the victim testified that the Defendant bragged that the victim would not be at work on Monday, March 28, 1994, because Defendant had "messed up" the victim. The Defendant argues that his denial of these events and the testimony of his former girlfriend, Aquilla Sorrell, verifying his whereabouts on the evening of the attack, do not allow for a rational trier of fact to have found him as the perpetrator of the crime against the victim. However, given the overwhelming

testimony by the victim and three (3) others who heard the Defendant brag about committing the crime, there is more than sufficient evidence whereby a rational trier of fact could have found Defendant as the perpetrator beyond a reasonable doubt. Any questions concerning the credibility of the witnesses and the weight to be given the evidence are resolved by the trier of fact, and we will not reweigh the evidence on Defendant's behalf. Pappas, 754 S.W.2d at 623; Cabbage, 571 S.W.2d at 835.

Defendant argues that the injuries sustained by the Defendant do not constitute "serious bodily injury." Aggravated robbery requires that a robbery be accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon or that the victim suffer serious bodily injury. Tenn. Code Ann. § 39-13-402. Tennessee Code Annotated section 39-11-106(a)(34) defines "serious bodily injury" as "bodily injury which involves:" (A) a substantial risk of death; (B) protracted unconsciousness; (C) extreme physical pain; (D) protracted or obvious disfigurement; or (E) protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty.

The evidence at trial, unrefuted by the Defendant, demonstrated the injuries the victim suffered included permanent damage to his left eye requiring the insertion of a metal plate which still causes the victim pain. In addition, he has a loss of feeling in his mouth. This evidence sufficiently meets the definition of a victim suffering "a protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34)(E). From the evidence, the jury could have rationally concluded that the Defendant committed aggravated robbery. This issue is without merit.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
GARY R. WADE, Presiding Judge


_____
JOHN EVERETT WILLIAMS, Judge